IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JULIE R. WHATLEY Administratrix Of the Estate of CURTIS STEEN,<br><br>Plaintiff,<br><br>v.<br><br>AUSTIN S. EASON, BOBBY KIMBROUGH Sheriff, FORSYTH SHERIFF'S OFFICE, and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,<br><br>Defendants. | ) | 1:25-CV-379 |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, Chief District Judge.

On May 15, 2022, Deputy Sheriff Austin Eason twice used a taser on 87 year-old Curtis Steen after Mr. Steen refused to walk to Deputy Eason's car to receive a citation for vandalism. Mr. Steen is now deceased, and the administratrix of his estate, Julie Whatley, contends that during this encounter Deputy Eason committed numerous torts and violated Mr. Steen's constitutional rights. She also asserts claims against Sheriff Bobby Kimbrough. Because genuine issues of material fact remain about whether Deputy Eason used excessive force, the plaintiff's Fourth Amendment claim for excessive force and state law claim for assault and battery remain for trial. Up to the limits of his surety bond, vicarious liability claims against Sheriff Kimbrough and Travelers also remain for trial. All other claims will be dismissed.

## I. Overview

On May 15, 2022, Deputy Eason was on duty and was dispatched to respond to a neighbor's complaint that Mr. Steen had dug a ditch on the neighbor's property. After a brief investigation, Deputy Eason went to Mr. Steen's residence. Mr. Steen argued with Deputy Eason about who owned the property, and Deputy Eason told Mr. Steen to come to his car to receive a citation for vandalism. Despite being threatened with arrest, Mr. Steen refused. Deputy Eason used his taser twice on Mr. Steen and placed him in handcuffs.

The plaintiff now brings claims against Deputy Eason under § 1983 for unlawful arrest and excessive force in violation of the Fourth Amendment, as well as state constitutional and common law claims. She also brings a *Monell* claim and state law wrongful retention and supervisory liability claims, against Sheriff Kimbrough, the Forsyth Sheriff's Office, and its surety bond provider, Travelers. Deputy Eason and the Sheriff's Office defendants separately move for summary judgment. Docs. 49, 55.

## II. Statement of Facts

As is appropriate at summary judgment, the facts as stated are either undisputed or viewed in the light most favorable to the plaintiff.

On May 15, 2022, a Sunday, Deputy Eason responded to a call about "potential vandalism at 720 Steen Rd., Kernersville, North Carolina." Doc. 49-1 at ¶¶ 2–3. The dispatch note transmitted to Deputy Eason stated as follows:

> [Caller] wanted to file charges against neighbor for destruction of property. Neighbor dug up a ditch and she said it looks awful and she has GIS print

> out to prove it is her land not the neighbors [illegible] sounds like civil issue but she wanted deputy . . . .

Video at 0:19;[1] *see* Doc. 77-2 at 16.[2]

Upon arriving at Steen Road, Deputy Eason met with Diana Hartness, a resident of the road, and Ms. Hartness repeated her concerns that Mr. Steen was damaging her property.[3] Ms. Hartness said Mr. Steen had come onto her property with a bulldozer and damaged her land. Doc. 49-1 at ¶ 4.[4] Deputy Eason consulted the Forsyth County GIS

---

[1] The quoted language can be seen on a laptop in Deputy Eason's patrol vehicle, as depicted near the beginning of his body-cam video. All citations to "Video" are to this body-cam video, which was filed manually by both the plaintiff and Deputy Eason. *See* Docs. 51, 74-3. The time specified is the elapsed time depicted when the video is played on the video program, VLC media player.

[2] Sheriff Kimbrough references in his deposition a similarly-worded "event report" prepared by "communication operator" Tysinger (first name not specified). Doc. 77-2 at 16.

[3] The only evidence about the scope of this conversation comes from Deputy Eason. Doc. 49-1 at ¶¶ 4, 6. The plaintiff points out that Deputy Eason's credibility is in question, noting specifically that after the tasing, Deputy Eason inaccurately told his supervisors that Mr. Steen had balled up his fists and attempted to strike the deputy two times. Doc. 69 at 3–4; Doc. 56-5 at 18–19 (acknowledgement by deputy that his earlier statement was incorrect). But some of Deputy Eason's testimony is corroborated by the video of his interaction with Mr. Steen, and to that extent the Court recites it here. As to other details of Ms. Hartness's report to Deputy Eason, including alleged statements that Mr. Steen had been acting erratically and carried a gun, the Court considers that to be a disputed fact. Likewise uncorroborated is his testimony that another unidentified neighbor told him Mr. Steen made threats and carried a pistol. Doc. 49-1 at ¶ 7. Where the determination of what actually happened depends on an assessment of the credibility of a witness, "this assessment is a disputed issue of fact that cannot be resolved on summary judgment." *Zoroastrian Ctr. & Darb–E–Mehr of Metro. Wash., D.C. v. Rustam Guiv Found. of N.Y.,* 822 F.3d 739, 751 (4th Cir. 2016).

[4] The plaintiff contends that Mr. Steen dug the ditch on his own property. Doc. 69 at 7. But Ms. Hartness's statements are cited here only to show, to the extent corroborated, the substance of what Deputy Eason gathered from Ms. Hartness, not for the truth of the matter asserted about property ownership. *See* Fed. R. Evid. 801(c)(2). The plaintiff does not offer any evidence disputing what Ms. Hartness told dispatch. Doc. 69 at 7 (recognizing in her brief that "Hartness called FCSO to complain that Steen had 'vandalized' her property"). Who actually owns the property is not material at this point.

map and concluded that the property belonged to Ms. Hartness. *Id*. at ¶ 5; *see* Video at 0:22–0:41.

Deputy Eason then went to Mr. Steen's residence. Video from his body-worn camera shows Deputy Eason interacting with Mr. Steen. Viewed in the light most favorable to the plaintiff, the video shows, in summary, the following.

Deputy Eason and Mr. Steen conversed in the doorway to his residence and on a small porch in front of the doorway. Mr. Steen is an elderly man with a small brace on one foot; during the two-minute interaction, he generally stood with his hand on the door frame or a piece of furniture as if for support. Mr. Steen admitted that he bulldozed the property. Deputy Eason had the GIS map in his hand and told Mr. Steen it showed the property lines. Video at 1:58–2:08. Mr. Steen argued with Deputy Eason about whether he owned the land and threatened to take other steps in the future to limit use of the land by others. *Id*. at 1:16–2:43. Deputy Eason told Mr. Steen he was going to write him "a ticket for vandalism," and Mr. Steen said "you cannot." *Id*. at 2:43–2:47. Deputy Eason gave Mr. Steen a choice: "Either you can walk with me to my car [to write a ticket], or I'm going to take you to jail." *Id*. at 2:55–3:10. After, Mr. Steen refused to walk with Deputy Eason to his car, Deputy Eason drew his taser and instructed Mr. Steen: "Turn around and put your hands behind your back." *Id*. at 3:15–3:24. When Mr. Steen instead moved towards his front door, Deputy Eason deployed his taser, and Mr. Steen fell to the ground; Deputy Eason deployed his taser a second time and then handcuffed Mr. Steen while he was on the ground. *Id*. at 3:24–4:07. At no time during the interaction did Mr. Steen display a weapon or threaten Deputy Eason.

Additional facts will be discussed when needed to address the claims raised.

## III. Claims Against Deputy Eason

### A. Federal Claims

#### 1. Excessive Force

The plaintiff asserts that Deputy Eason violated Mr. Steen's Fourth Amendment right to be free from excessive force. Doc. 1 at pp. 14–15, ¶¶ 71–72, 74, 79. Deputy Eason makes no argument in his motion or briefs in support of summary judgment on the plaintiff's excessive force claim. *See* Docs. 49–50, 79.

To the extent Deputy Eason's motion for summary judgment is directed to this claim, it will be denied. Deputy Eason has not met his initial burden of "identifying those portions of [the record] which [he] believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). He has also not "set out the elements that the claimant must prove (with citations to supporting authority), and explain[ed] why the evidence is insufficient to support a jury verdict on an element or elements, or why some other rule of law would defeat the claim." LR 56.1(e).

Even if he had raised this issue in his brief, summary judgment would be denied because the plaintiff's evidence is sufficient to support her federal excessive force claim. *See Graham v. Connor*, 490 U.S. 386, 397 (1989) (holding that the Fourth Amendment protects citizens from excessive force during an arrest); *Hupp v. Cook*, 931 F.3d 307, 321–22 (4th Cir. 2019). There was no immediate emergency, the crime at issue was a property crime and a misdemeanor, Mr. Steen was an elderly man with apparent physical issues, Mr. Steen had not threatened Deputy Eason, and when Mr. Steen indicated he

would not accept a citation, Deputy Eason tried nothing less physically intrusive before drawing his taser and pointing it at Mr. Steen and then deploying it twice on Mr. Steen.[5] A jury could conclude based on the relevant factors that twice tasing Mr. Steen was not objectively reasonable. *See* Video at 2:55–4:07.

Deputy Eason's motion for summary judgment is denied to the extent it is directed against the excessive force claim.

**2. Wrongful Arrest**

"The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable." *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 183 (4th Cir. 1996). A seizure for Fourth Amendment purposes can take the form of an arrest or some other seizure short of an affirmative statement placing a person under arrest, depending on the circumstances. *See Torres v. Madrid*, 592 U.S. 306, 311, 317 (2021) (stating "merely touching [is] sufficient to constitute an arrest," if made "with intent to restrain"); *I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984) ("An initially consensual encounter between a police officer and a citizen can be transformed into a seizure or detention within the meaning of the Fourth Amendment, if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (cleaned up)).

[5] Deputy Eason says he was told that Mr. Steen carried a gun. Doc. 49-1 ¶¶ 6–7. But this testimony is uncorroborated and Deputy Eason made other statements about the interaction with Mr. Steen that were untruthful. *See supra* note 3. A jury could easily disbelieve Deputy Eason's self-serving testimony on this point.

Here, Deputy Eason told Mr. Steen that he would "go to jail" if he did not accept the citation, and thereafter Deputy Eason used physical force to accomplish this arrest. Video at 3:10–3:56. The parties are in accord that this was an arrest, *see* Doc. 50 at 3, Doc. 69 at 16, and the Court applies cases analyzing arrests.

"Probable cause to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *United States v. Dickey-Bey*, 393 F.3d 449, 453 (4th Cir. 2004) (cleaned up). "Probable cause is determined by a totality-of-the-circumstances approach." *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017).

Courts "look to the information available to the officer on the scene at the time," and then "apply an objective test to determine whether a reasonably prudent officer with that information would have thought that probable cause existed for the arrest." *Hupp*, 931 F.3d at 318. "Evidence sufficient to secure a conviction is not required," but summary judgment is not warranted when "the historical facts material to a probable cause finding are in dispute." *Id.*

Here, the undisputed facts show that Deputy Eason had probable cause to believe Mr. Steen had committed the crime of willful and wanton injury to real property, a Class 1 misdemeanor, in violation of N.C. Gen. Stat. § 14-127. First, the dispatch report sent to Deputy Eason stated a suspect had "dug up a ditch" and the neighbor "has GIS print out to prove it is her land not the [suspect's]." Video at 0:19; *see* Doc. 77-2 at 16. Second, Deputy Eason spoke with Ms. Hartness, who corroborated the information on the

dispatch and identified Mr. Steen as her neighbor. Doc. 49-1 at p. 2 ¶ 4; *see* Doc. 69 at 7 (recognizing that "Hartness called FCSO to complain that Steen had 'vandalized' her property"). Third, Deputy Eason took steps to "confirm[] the property lines" using a GIS map, which was printed out and in his hand as he parked at Mr. Steen's residence and knocked on Mr. Steen's door. Doc. 49-1 at pp. 2–3, ¶¶ 4–5. Fourth, Mr. Steen confirmed to Deputy Eason that he had a long-running dispute with neighbors, and he did not deny digging with his bulldozer in the area in question. Video at 1:25-1:42, 2:55-3:05. Finally, Mr. Steen stated he intended to take additional action to impede activities of his neighbors on the disputed property. *Id.* at 2:30 ("And as fast as they go, them sons of a bitches, I'm going to put a pole down there.").[6]

The plaintiff suggests there was no probable cause for an arrest because a "boundary dispute between neighbors is clearly a civil matter, not a criminal matter." Doc. 69 at 9; *see id.* at 10–15. She cites testimony by Sheriff Kimbrough, along with the dispatch note, indicating that "this was a civil matter," *id.* at 10, as well as Sheriff's policies about handling civil disputes. *Id.* at 11. She further contends that an arrest was not permitted because Mr. Steen had committed at most a misdemeanor outside of Deputy Eason's presence. *Id.* at 18–20.

[6] Deputy Eason also suggests that he had probable cause to believe Mr. Steen committed the offense of resisting, delaying, or obstructing the "discharge of an official duty," in violation of N.C. Gen. Stat. § 14-223(a). Doc. 50 at 9; *see* Doc. 77-1 at 73. Because the undisputed facts show that Deputy Eason had probable cause to arrest Mr. Steen for the crime of injury to real property, the Court need not address this proffered justification. *See District of Columbia v. Wesby*, 583 U.S. 48, 54 n.2 (2018) (noting that "an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking").

These contentions are inapposite, however, in the analysis of a federal constitutional claim for wrongful arrest. The sole issue for the Court is whether there was probable cause for "an offense," not whether the officer followed sheriff's procedures or state law procedures. *Dickey-Bey*, 393 F.3d at 453; *see Street v. Surdyka*, 492 F.2d 368, 372 (4th Cir. 1974) ("The states are free to impose greater restrictions on arrests, but their citizens do not thereby acquire a greater federal right.").

Whether the offense was a felony or a misdemeanor, or committed within or outside Deputy Eason's presence, is not determinative of the Fourth Amendment analysis. *See Street*, 492 F.2d at 372 (holding the Fourth Amendment does not "prohibit warrantless arrests for misdemeanors committed outside an officer's presence"); *United States v. Gonzalez*, 107 F.4th 1304, 1309–10 (11th Cir. 2024) ("Every circuit to face this issue has held that the Fourth Amendment does not include an in-the-presence requirement for warrantless misdemeanor arrests." (cleaned up)); *York v. City of Burlington*, 225 F. Supp. 3d 341, 347 (M.D.N.C. 2016) (holding that arrest for misdemeanor committed outside officer's presence did not violate Fourth Amendment when supported by probable cause). Similarly, the fact that a dispute may also be appropriate for resolution in a civil case does not automatically mean that probable cause does not exist; many injuries have both civil and criminal remedies.

The undisputed facts show that Deputy Eason had probable cause to believe Mr. Steen had committed a crime. When that is the case, an arrest does not violate the Fourth Amendment. Because there is no genuine issue of fact as to probable cause to arrest Mr. Steen for the offense of injury to real property, in violation of N.C. Gen. Stat. § 14-127,

Deputy Eason is entitled to summary judgment on the plaintiff's federal wrongful arrest claim.

### B. State Law Claims Against Deputy Eason

The plaintiff asserts a number of state law tort claims against Deputy Eason, along with a claim based on violation of Mr. Steen's state constitutional rights. *See* Doc. 1 at 10–12, 14–16; Doc. 69 at 20–21. The Court addresses each in turn.

#### 1. Wrongful Arrest

The parties do not draw any distinction in their briefs between the law applicable to the federal and state law claims for wrongful arrest. *See* Doc. 50 at 6–7, 10–11; Doc. 69 at 8–20. In the absence of any assertion by the parties of a difference between the two claims, the Court grants summary judgment to Deputy Eason on the plaintiff's state law wrongful arrest claim, on the same basis as summary judgment is granted on the federal wrongful arrest claim.[7]

#### 2. Assault and Battery

As with the federal excessive force claim, Deputy Eason does not address the plaintiff's assault and battery claim. He raises public officer immunity as a defense, but

[7] Courts are not required to undertake the analysis and legal research needed to support an absent or perfunctory argument. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.1978); *Lab'y Corp. of Am. Holdings v. Kearns*, 84 F.Supp.3d 447, 459–60 (M.D.N.C. 2015) (quoting *Hayes v. Self–Help Credit Union*, No. 13-CV-880, 2014 WL 4198412, at *2 (M.D.N.C. Aug. 22, 2014)); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1320 n.3 (Fed. Cir. 2005) (refusing to address an undeveloped argument raised in a footnote); *Hughes v. B/E Aerospace, Inc.*, No. 12-CV-717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) ("A party should not expect a court to do the work that it elected not to do."); *Cathey v. Wake Forest Univ. Baptist Med. Ctr.*, 90 F. Supp. 3d 493, 509 (M.D.N.C. 2015) ("It is not the court's job to undertake the analysis and legal research needed to support such a perfunctory argument.").

asserts only that "there is no evidence that Eason acted with malicious or corrupt intent when he investigated the injury to real property and when he decided to issue Steen a citation for Steen's conduct." Doc. 50 at 14. This conclusory argument, unsupported by any citation to case law, does not meet Deputy Eason's initial burden of "identifying those portions of [the record] which [he] believes demonstrate the absence of a genuine issue of material fact" as to assault and battery. *Celotex Corp.*, 477 U.S. at 323; *see supra* note 7. Deputy Eason's motion for summary judgment on this claim will be denied.

### 3. Abuse of Process

Deputy Eason moves for summary judgment on the plaintiff's abuse of process claim, identifying the elements on which the plaintiff has not demonstrated a genuine issue of material fact. Doc. 50 at 12. "Abuse of process is the misuse of legal process for an ulterior purpose." *Stanback v. Stanback*, 297 N.C. 181, 200, 254 S.E.2d 611, 624 (1979), *overruled in part on other grounds by Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981). "It consists in the malicious misuse or misapplication of that process after issuance to accomplish some purpose not warranted or commanded by the writ." *Id*.

To establish an abuse of process claim, a plaintiff must show that the defendant made improper use of process after it has been issued. *Barnette v. Woody*, 242 N.C. 424, 431, 88 S.E.2d 223, 227 (1955). This requirement is satisfied when the plaintiff shows that "once the prior proceeding was initiated, the defendant committed some willful act whereby he sought to use the existence of the proceeding to gain advantage of the plaintiff in respect to some collateral matter." *Stanback*, 297 N.C. at 201 (cleaned up).

Here, the plaintiff's abuse of process claim fails because she does not show a genuine issue of material fact on "the act" element of the claim. *Id*. In particular, she does not point to evidence that Deputy Eason took some act with the "legal process" – here, the citation – "after issuance" that was "not proper in the regular prosecution" of such a citation. *Id*.

The undisputed evidence shows that Deputy Eason served the citation on Mr. Steen when he was in the hospital after the use of force incident. *See* Hospital Video at 3:38-5:16.[8] There is no evidence that Deputy Eason engaged in any action after issuance of the citation "to accomplish some purpose not warranted or commanded by the writ." *Stanback*, 297 N.C. at 200. Indeed, it is undisputed that Deputy Eason left employment with the Sheriff's Office "within days" later, and charges against Mr. Steen were dismissed. Doc. 56-5 at p. 1 ¶ 3; *see* Doc. 1 at ¶ 27; Doc. 12 at ¶ 27; Doc. 14 at ¶ 27.

In opposition to this aspect of the motion, the plaintiff states, incorrectly, that "Eason does not take issue with Plaintiff's claim for abuse of process." Doc. 69 at 20. She asserts that "[t]he act requirement is satisfied when the plaintiff alleges that once the prior proceeding was initiated, the defendant committed some willful act whereby he sought to use the existence of the proceeding to gain advantage of the plaintiff in respect to some collateral matter." *Id*. at 21. But she does not identify the "willful act," and this conclusory and circular assertion does give rise to a disputed question of material fact. *Stanback*, 297 N.C. at 201.

[8] The plaintiff manually filed the Hospital Video, with a placeholder indicated on the docket at Doc. 72-7. The filename states "Eason at Baptist Hospital."

Deputy Eason's motion for summary judgment on this claim will be granted.

### 4. State Constitutional Claim

A plaintiff may only bring a claim under the state constitution "in the absence of an adequate state remedy." *Corum v. Univ. of N.C. Through Bd. of Governors*, 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992). Since the plaintiff has the ability to assert state common law claims, her state constitutional claim is barred. *Penley v. McDowell Cnty. Bd. of Educ.*, 876 F.3d 646, 661 (4th Cir. 2017).

Summary judgment on this claim will be granted to Deputy Eason.

### 5. Malicious Prosecution and Injury to Prisoner Claims

The plaintiff asserted claims for "malicious prosecution" and "injury to prisoner" in her complaint, but she abandons these claims in response to Deputy Eason's summary judgment motion. *See* Doc. 1 at 13–14, 17; Doc. 69 at 2. Summary judgment in favor of Deputy Eason is granted on the plaintiff's claims for malicious prosecution (state and federal, if any) and injury to prisoner.

## IV. Claims Against Sheriff Kimbrough[9] and His Office

### A. Sheriff's Office

The plaintiff agrees that the Forsyth Sheriff's Office "is not a 'person' amendable to suit." Doc. 68 at 2. Her claims against the Forsyth Sheriff's Office thus are dismissed.

[9] The plaintiff agrees that her claims against Sheriff Kimbrough are "solely in his official capacity." Doc. 68 at 2. To the extent the complaint can be read to assert claims against him in his individual capacity, they will be dismissed.

### B. Federal Claim Against Sheriff Kimbrough

In her complaint, the plaintiff asserts a state law claim against Sheriff Kimbrough in his official capacity for failing to supervise Deputy Eason and for wrongfully retaining Deputy Eason as a law enforcement officer after repeated acts of misconduct. Doc. 1 at ¶¶ 51–59. She does not explicitly raise a § 1983 claim against the Sheriff on this basis, but arguably, perhaps, a *Monell* claim is asserted. *See Monell v. Dep't of Social Servs.,* 436 U.S. 658 (1978). Sheriff Kimbrough moves for summary judgment to the extent the plaintiff attempts to assert a *Monell* claim against him. Doc. 56 at 11.

An entity may be liable under *Monell* only "if it follows a custom, policy, or practice by which local officials violate a plaintiff's constitutional rights." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 402 (4th Cir. 2014). The plaintiff here proceeds, in effect, on "a theory of custom by condonation." *Id*. "[F]ault for a violation resulting from condoned custom can only be ascribed when a pattern of comparable practices has become actually or constructively known to responsible policymakers." *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987).

"To prevail under this theory, a plaintiff must point to a persistent and widespread practice of municipal officials, the duration and frequency of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference." *Johnson v. Balt. City, Md.,* 163 F.4th 808, 822 (4th Cir. 2026) (cleaned up). "Sporadic or isolated violations of rights will not give rise to Monell liability; only widespread or flagrant violations will." *Id.* "There must be

numerous particular instances of unconstitutional conduct to establish a custom or practice." *Id.* (cleaned up).

The plaintiff has not proffered evidence sufficient to create a disputed question of fact as to a pattern of comparable practices. The plaintiff points to how the Sheriff's Office responded when Deputy Eason was involved in an illegal search and unprofessional conduct in 2020. Doc. 68 at 8–9, 18; *see* Doc. 75-2 at 30 (stating Deputy Eason "performed an illegal search of residence" "acted in a manner tending to bring discredit upon the staff member or the FCSO"). But Deputy Eason was reprimanded and placed on probation following his improper search in 2020. *See* Doc. 75-2 at 1–2, 35–56; Doc. 77-2 at 23–24. Other incidents of misconduct cited by the plaintiff are even less comparable to the alleged misconduct here. *See* Doc. 68 at 7–8 (accident with police vehicle, failure to activate body-cam, and refusing to take a report at a Sheetz station). This evidence does not show a "persistent and widespread" condonation of a "pattern of comparable practices." *Spell*, 824 F.2d at 1391; *Johnson,* 163 F.4th at 822.

The plaintiff contends that Deputy Eason's improper search in 2020 represented the "actual policies" of the Sheriff, because Deputy Eason's supervisors, despite the illegal search, determined Deputy Eason's "performance 'exceeds expectations' in every category of measurement" in the same year that he was placed on probation. Doc. 68 at 18. But the plaintiff does not cite any evidence that the terms of the probationary discipline were not followed. In addition, a positive review of his overall performance does not establish a "persistent and widespread" condonation of a "pattern of comparable practices" to the present incident. *Spell*, 824 F.2d at 1391; *Johnson,* 163 F.4th at 822.

Finally, the plaintiff has not pointed to any evidence that Sheriff Kimbrough or any policymaker in his office condoned or allowed the use of force in this case. To the contrary, three supervising officers concluded that Deputy Eason's use of force was unreasonable. Doc. 75-3 at 5, 8, 31.

Sheriff Kimbrough's motion is granted on the plaintiff's *Monell* claim.

**C. State Law Claims Against Sheriff Kimbrough**

The plaintiff asserts state law claims against Sheriff Kimbrough in his official capacity for wrongful retention/failure to supervise, violation of the state constitution, and vicarious liability. Doc. 1 at 12–16; *see* Doc. 68 at 2, 10–14, 18. Sheriff Kimbrough contends the wrongful retention/failure to supervise claim and the vicarious liability claim are barred beyond the amount of the surety bond and that the wrongful retention claim is otherwise not supported by the evidence. He contends the state constitutional claim is barred because there is an adequate state remedy.

**1. Governmental Immunity**

The parties appear to agree that Sheriff Kimbrough is entitled to governmental immunity beyond the amount of the surety bond. Doc. 56 at 9–10 (citing, e.g., *Beck v. City of Durham*, 154 N.C. App. 221, 229, 573 S.E.2d 183, 189 (2002)); Doc. 68 at 2 (the plaintiff's acknowledgment that sheriff has partially waived immunity because of the bond).[10] Any damages award against Sheriff Kimbrough will be limited to the amount of the bond.

[10] The plaintiff suggests the limit of bond is $25,000.00, *see* Doc. 68 at 2, 18, and the Sheriff does not dispute this amount in his reply brief. Doc. 78.

### 2. Wrongful Retention/Supervision and State Constitution

The plaintiff has not established a genuine issue of material fact on her wrongful retention/supervision claim. She has not offered evidence sufficient to support a finding of "inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred," and "actual notice to the master of such unfitness or bad habits." *Medlin v. Bass*, 327 N.C. 587, 591, 398 S.E.2d 460, 462 (1990) (cleaned up). This claim fails for the same reason as the plaintiff's *Monell* claim for failure to supervise, as discussed *supra*. Likewise, the state constitutional claim fails for the same reason as the same claim against Deputy Eason, as discussed *supra.*

### 3. Vicarious Liability

Sheriff Kimbrough does not address the merits of the vicarious liability claim against him. Doc. 56 at 14. Whether the Sheriff is vicariously liable for the assault and battery allegedly committed by Deputy Eason remains an issue for trial, with damages against the Sheriff limited to the amount of the surety bond.

### 4. Punitive Damages

The plaintiff also asserts a claim of punitive damages, and Sheriff Kimbrough seeks dismissal of this claim because all other claims must be dismissed. Doc. 1 at 16; Doc. 56 at 15. As the Sheriff accurately points out, this is not a stand-alone claim, but rather is a type of damages that may be awarded in the event of liability on the plaintiff's other claims remaining for resolution at trial. *See Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enters., Inc.*, 505 F. Supp. 3d 570, 593 (M.D.N.C.

2020). Since claims remain against both parties, dismissal of the plaintiff's request for punitive damages at this juncture is not warranted.

## V. Motion to Seal

The plaintiff filed a motion to seal certain exhibits, apparently because the defendants had identified those exhibits as confidential during discovery. Doc. 73. The plaintiff does not claim that sealing is necessary. *Id.* at 2. The defendants have themselves since filed personnel records on the public docket, *see* Doc.75, and have not responded to the motion to seal or filed their own motion to seal. *See* Doc. 65 (denying previous motions to seal and setting schedule to refile). In the absence of any evidence establishing that the public's First Amendment right of access to these summary judgment materials should be restricted, the motion to seal will be denied. The exhibits that are subject of the motion will be unsealed. *See* Docs. 74-1, 74-2, 74-3, 77-1, 77-2.

## VI. Conclusion

Because genuine issues of fact remain about whether Deputy Eason used excessive force, the plaintiff's Fourth Amendment claim for excessive force and state law claim for assault and battery remain for trial. Up to the limits of the bond, the claim that Sheriff Kimbrough is vicariously liable of any assault committed by Deputy Eason, and Travelers' liability on the bond for the same, also remain for trial. All other claims will be dismissed.

It is **ORDERED AND ADJUDGED** that:

1. Defendant Deputy Eason's motion for summary judgment, Doc. 49, is **GRANTED IN PART and DENIED IN PART** as follows.

a. The following claims against Deputy Eason shall proceed to trial:

i. Excessive force claim under the Fourth Amendment. Doc. 1 at 14–16 (part of Sixth Claim).

ii. Assault and battery under North Carolina law. *Id.* at 11–12 (Second Claim).

a. All remaining claims against Deputy Eason are **DISMISSED**, including:

i. Wrongful arrest claim under the Fourth Amendment and North Carolina law. *Id.* at 10–11, 14–16 (First Claim and part of Sixth Claim).

ii. Malicious prosecution claim under the Fourth Amendment and North Carolina law. *Id.* at 13–14 (Fourth Claim and part of Sixth Claim).

iii. Abuse of process claim under North Carolina law. *Id.* at 14. (Fifth Claim).

iv. Injury to prisoner claim under North Carolina law. *Id.* at 17 (Eighth Claim).

2. The Sheriff's Office Defendants' motion for summary judgment, Doc. 55, is **GRANTED IN PART and DENIED IN PART** as follows.

a. All claims against defendant Forsyth Sheriff's Office are **DISMISSED**.

b. The plaintiff's claim against defendants Sheriff Kimbrough and Travelers for vicarious liability for assault and battery under North Carolina law up to

the limits of the surety bond remains for trial. Doc. 1 at 11–12, 17 (part of Second Claim and Ninth Claim).

   c. All remaining claims against defendants Sheriff Kimbrough and Travelers are **DISMISSED,** including:

      i. Federal § 1983 claim under *Monell*. *Id.* at 14–16 (part of Sixth Claim).

      ii. Wrongful retention/failure to supervise under North Carolina law and North Carolina Constitution claim. *Id.* at 12–13 (Third Claim and part of Sixth Claim).

      iii. Vicarious liability under North Carolina law in excess of $25,000. *Id.* at 11–12, 17 (part of Second Claim and Ninth Claim).

3. The plaintiff's motion to seal, Doc. 73, is **DENIED** and the Clerk **SHALL** unseal Docs. 74-1, 74-2, 74-3, 77-1, 77-2, the exhibits that are subject of the motion.

This the 14th day of August, 2026.

UNITED STATES DISTRICT JUDGE